UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TYLER SPIRES,

    Plaintiff,

v.                                          Case No. 8:22-cv-2683-AEP

MARTIN O'MALLEY,
Commissioner of Social Security,[1]

    Defendant.
_____/

**ORDER**

Plaintiff seeks judicial review of the denial of his claim for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI"). As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the Commissioner's decision is affirmed.

**I.**

**A.   Procedural Background**

Plaintiff filed an application for a period of disability, DIB, and SSI (Tr. 10, 259). The Social Security Administration ("SSA") denied Plaintiff's claims both initially and upon reconsideration (Tr. 10, 96, 110). Plaintiff then requested an

---

[1] Martin O'Malley is now the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Commissioner Martin O'Malley should be substituted for Acting Commissioner Kilolo Kijakazi as the defendant in this matter. No further action needs to be taken to continue this matter by reason of the last sentence of section 205(g) of the Social Security Act. 42 U.S.C. § 405(g).

administrative hearing (Tr. 172–73). Per Plaintiff's request, the ALJ held a hearing via telephone at which Plaintiff appeared and testified (Tr. 36–58, 207). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 7–35). Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1–6). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

### B.  Factual Background and the ALJ's Decision

Plaintiff, who was born in 1988, claimed disability beginning March 1, 2019[2] (Tr. 10, 27). Plaintiff obtained a high school education (Tr. 27). Plaintiff's past relevant work experience included work as an irrigation system installer and landscape gardener (Tr. 26). Plaintiff alleged disability due to cirrhosis of the liver end stage, IGA nephropathy, atrial fibrillation, depression, sciatica, slip disk, and hepatic encephalopathy (Tr. 292).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through June 30, 2023, and had not engaged in substantial gainful activity since March 1, 2019, the alleged onset date (Tr. 12). After conducting a hearing and reviewing the evidence of record, the ALJ determined

---

[2] During the hearing held on April 13, 2022, Plaintiff moved to amend the alleged onset date from March 1, 2019, to May 22, 2020 (Tr. 45). The ALJ then amended the alleged onset date on the record (Tr. 45). However, Plaintiff's applications in the record, the ALJ's decision, and both briefs on the matter before this Court (Docs. 9, 12) do not reflect the amendment and instead state that the alleged onset date of disability is March 1, 2019 (Tr. 10). This Court recognizes the discrepancy but notes that for the purposes of this review, it has no bearing on the outcome.

2

Plaintiff had the following severe impairments: chronic liver disease, nephropathy, cirrhosis, degenerative disc disease, peripheral neuropathy, cardiac dysregulation, atrial fibrillation, and hypertension (Tr. 12). Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 15). The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform

> light work as defined in 20 CFR 404.1567(b) and 416.967(b) with exceptions. The claimant can lift twenty pounds occasionally and ten pounds frequently. He can stand/walk six hours per day and sit six hours per day. The claimant can never climb ladders, ropes, and scaffolds; and occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. He must avoid temperature extremes, vibration, hazardous machinery, and heights. The claimant can understand, remember, and carry out routine and repetitive instructions and tasks with a GED reasoning level of one or two.

(Tr. 17). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 18).

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), however, the ALJ determined Plaintiff could not perform his past relevant work (Tr. 26). Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national

economy, such as a routing clerk (DOT #222.687-022), an unskilled job, with a GED reasoning level of two, performed at the light level of exertion (with 42,000 such positions in the national economy); an office helper (DOT #239.567-010), an unskilled job, with a GED reasoning level of two, performed at the light level of exertion (with 34,000 such positions in the national economy); and an inspector and hand packager (DOT #559.687-0741), an unskilled job, with a GED reasoning level of two, performed at the light level of exertion (with 39,000 such positions in the national economy) (Tr. 27–28). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 28).

## II.

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

To regularize the adjudicative process, the SSA promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation

process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The ALJ, in part, decides Plaintiff's claim pursuant to regulations designed to incorporate vocational factors into the consideration of disability claims. *See* 20 C.F.R. §§ 404.1501, *et seq.* These regulations apply in cases where an individual's medical condition is severe enough to prevent him from returning to his former employment but may not be severe enough to prevent him from engaging in other substantial gainful activity. In such cases, the Regulations direct that an individual's residual functional capacity, age, education, and work experience be considered in

determining whether the claimant is disabled. These factors are codified in tables of rules that are appended to the regulations and are commonly referred to as "the grids." 20 C.F.R. Part 404, Subpart P, App. 2. If an individual's situation coincides with the criteria listed in a rule, that rule directs a conclusion as to whether the individual is disabled. 20 C.F.R. §§ 404.1569, 416.969. If an individual's situation varies from the criteria listed in a rule, the rule is not conclusive as to an individual's disability but is advisory only. 20 C.F.R. §§ 404.1569a, 416.969a.

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation and internal quotation marks omitted). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Winschel*, 631 F.3d at 1178 (citations omitted); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal

6

analysis, mandates reversal. *Ingram*, 496 F.3d at 1260 (citation omitted). The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (per curiam) (citations omitted).

### III.

Plaintiff argues that the ALJ erred (1) by improperly evaluating the record when making the RFC determination; and (2) by failing to adequately evaluate the opinion of Plaintiff's treating physician, Dr. Sharma. For the following reasons, the ALJ applied the correct legal standards, and the ALJ's decision is supported by substantial evidence.

**A. Whether the ALJ's evaluation of Plaintiff's RFC is supported by substantial evidence**

Plaintiff argues that the ALJ's RFC assessment does not account for all the functional limitations that are supported by the record in two specific instances. First, Plaintiff asserts that the record contradicts the ALJ's statement that "there is no evidence of any significant side effects of medications." (Tr. 25). Second, Plaintiff contends that the RFC assessment does not adequately account for his chronic fatigue.

The ALJ evaluated Plaintiff's application using the five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. To determine if Plaintiff could perform other jobs at step five, the ALJ assessed Plaintiff's RFC. *See* 20 C.F.R.

§§ 404.1520(e), 416.920(e). An RFC assessment represents "the most" a claimant "can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The ALJ makes this determination by considering the claimant's ability to "meet the physical, mental, sensory, and other requirements of work." *Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010) (quoting 20 C.F.R. § 416.945(a)(4)). The RFC assessment must describe the combined effects of all a claimant's impairments, including those that the ALJ found to be non-severe. *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984); *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987); *Reeves v. Heckler*, 734 F.2d 519, 525 (11th Cir. 1984).

  Plaintiff argues that in making the RFC assessment, the ALJ failed to account for the side effects from the drug lactulose used to treat Plaintiff's hepatic encephalopathy. Plaintiff states that the medication caused loose bowel movements and diarrhea, and thus, the record evidence demonstrates that the ALJ should have found greater limitations in the RFC assessment (Tr. 499, 559, 609–10, 624–25, 628–29, 1239, 1496). In evaluating a claimant's residual functional capacity, the ALJ must appropriately consider all of the available evidence, including the effectiveness and side effects of any medication. *See* 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv); *Sorter v. Soc. Sec. Admin., Comm'r*, 773 F. App'x 1070, 1073 (11th Cir. 2019). After reviewing the record evidence, the ALJ found that Plaintiff's conditions and treatment documented the need for the limitations contained in the RFC finding, but the evidence did not demonstrate the need for any greater limitations (Tr. 19).

The ALJ stated that Plaintiff takes lactulose to help his body eliminate ammonia and this results in frequent restroom use (Tr. 18, 48). The ALJ noted that Plaintiff testified his average restroom visit was twenty-five minutes, which occurred seven to eight times a day and that his doctor was working on adjusting his medication to reduce the frequency of his restroom visits (Tr. 18, 48). The ALJ addressed Plaintiff's side effects from lactulose several times. The ALJ noted that Plaintiff was seen on August 4, 2020, and stated that he continued to take lactulose with varying bowel movements of three to four times per day (Tr. 19, 554). During the visit, it was noted that Plaintiff's abdomen was soft, non-tender, and non-distended, with normal bowel sounds (Tr. 19, 555). Further, the record showed that Plaintiff suffered from no nausea, vomiting, or diarrhea (Tr. 554). Plaintiff's visit on September 8, 2020, similarly reported that Plaintiff continued to take lactulose and indicated between zero and three bowel movements per day (Tr. 19, 559) The ALJ later noted Plaintiff's visit on October 15, 2020, where he reported having mild mental fogginess despite compliance with lactulose (Tr. 20, 499). The ALJ stated that at that visit Plaintiff reported he was having more than three bowel movements per day (Tr. 20, 499). The ALJ also noted from Plaintiff's visit on January 25, 2021, that he was still taking lactulose and reported intermittent dizziness but denied diarrhea and constipation (Tr. 20, 1250).

At this stage, Plaintiff primarily relies on the ALJ's concluding statement that there is "no evidence of any significant side effects of medications" to argue that the ALJ's RFC assessment failed to account for Plaintiff's medications and side effects.

9

Taking the ALJ's comment about side effects from medications in context with the evaluation of Plaintiff's RFC as detailed above, demonstrates that the ALJ properly considered and addressed Plaintiff's lactulose intake and its side effects based on the record evidence. Accordingly, the ALJ's RFC assessment with regard to the loose bowel movements and diarrhea side effects of Plaintiff's medication is supported by substantial evidence.

Additionally, Plaintiff argues that the record evidence demonstrates Plaintiff's tiredness and fatigue is more severe than the ALJ found, and therefore the RFC assessment is not supported by substantial evidence. This Court must determine if the ALJ's decision is support by substantial evidence. "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation and internal quotation marks omitted). Given that, the scope of this Court's review "precludes us from 're-weighing the evidence or substituting our judgment for that [of the Commissioner] . . . even if the evidence preponderates against' the decision." *Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). Plaintiff's argument that the ALJ's decision did not accurately reflect her severity of fatigue essentially invites this Court to reweigh the evidence in the record. This Court is not permitted to do so.

The ALJ noted Plaintiff's testimony about his fatigue and its effect on his sleeping patterns (Tr. 18, 46–47). The ALJ explained that Plaintiff testified he

sometimes sleeps excessively and other times he has insomnia, but at all times he is fatigued and sleeps during the day (Tr. 18, 47). In making the RFC assessment, the ALJ determined that Plaintiff retained the ability to perform work at a light level, taking into account that he is limited to routine and repetitive tasks due to the effects of fatigue (Tr. 18–19). Further, the ALJ determined that the record evidence did not support the need for greater limitation due to, among other subjective complaints, Plaintiff's fatigue (Tr. 24). The ALJ supported this conclusion by confirming that Plaintiff has limited his climbing and exposure hazards to accommodate his fatigue (Tr. 24–25). The ALJ demonstrated proper consideration of Plaintiff's complaints of fatigue and limited his RFC assessment accordingly.

Upon review, Plaintiff has not identified any legal error in the ALJ's assessment of his medication side effects and fatigue, nor has Plaintiff shown the ALJ's decision is not supported by substantial evidence.

**B.     Whether the ALJ's evaluation of Dr. Sharma's medical opinion is supported by substantial evidence**

Next, Plaintiff argues that the ALJ did not adequately evaluate the opinion of treating physician, Dr. Sharma, when concluding that the record evidence is inconsistent with Dr. Sharma's opinion. Plaintiff claims that the ALJ failed to consider the evidence as a whole by overlooking treatment notes that supported Dr. Sharma's findings. On January 25, 2021, Dr. Sharma submitted a medical source statement noting that Plaintiff had been diagnosed with liver cirrhosis with hepatic encephalopathy, coagulopathy, IgA nephropathy with hematuria, peripheral

neuropathy, insomnia, jaundice, and atrial fibrillation (Tr. 1510). Dr. Sharma indicated that Plaintiff had clinical findings such as reduced short-term memory, forgetfulness, poor concentration, and psychomotor retardation (Tr. 1510).

Regarding functional limitations, Dr. Sharma indicated that Plaintiff was markedly limited in understanding, remembering, and carrying out very short and simple instructions; working in coordination with or proximity to others without being unduly distracted; and asking simple questions or requesting assistance (Tr. 1512). Dr. Sharma determined that Plaintiff was extremely limited in remembering work procedures; maintaining attention for two-hour segments; maintaining regular attendance; working in coordination with or proximity to others without being unduly distracted; performing at a consistent pace without an unreasonable number of rest periods; accepting instructions and responding appropriately to criticism from supervisors; responding appropriately to changes in a routine work setting; and dealing with normal work stress (Tr. 1512). Dr. Sharma noted that Plaintiff would be absent for more than 4 days per month and would be off task for 25 percent or more of the workday (Tr. 1513).

When assessing the medical evidence, the ALJ may reject any opinion when the evidence supports a contrary conclusion. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (citation omitted). A reviewing court will not second guess an ALJ's decision regarding the weight to afford a medical opinion, so long as the ALJ articulates a specific justification for the decision. *See Hunter v. Soc. Sec. Admin. Comm'r*, 808 F.3d 818, 823 (11th Cir. 2015). Previously, an ALJ was

required to afford the testimony of a treating physician substantial or considerable weight unless "good cause" was shown to the contrary. *Winschel*, 631 F.3d at 1179; *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (per curiam) (citation omitted). However, claims filed on or after March 27, 2017, are governed by a new regulation applying a modified standard for the handling of opinions from treating physicians. *See* 20 C.F.R. § 404.1520c; *see also Schink v. Comm'r of Soc Sec.*, 935 F.3d 1245, 1259 n.4 (11th Cir. 2019). The new regulations remove the "controlling weight" requirement when considering the opinions of treating physicians for applications submitted on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c(a); *Yanes v. Comm'r of Soc. Sec.*, No. 20-14233, 2021 WL 2982084, at *5 n.9 (11th Cir. July 15, 2021). Because Plaintiff submitted his application for benefits on August 25, 2020 (Tr. 10), the new regulation applies.

Under 20 C.F.R. § 404.1520c, an ALJ will not defer or give any specific evidentiary weight to any medical opinion or prior administrative finding, including from a claimant's medical source. 20 C.F.R. § 404.1520c(a). The primary factors an ALJ will consider when evaluating the persuasiveness of a medical opinion are supportability and consistency. 20 C.F.R. § 404.1520c(a), (b)(2). Specifically, the more a medical source presents objective medical evidence and supporting explanations to support the opinion, the more persuasive the medical opinion will be. 20 C.F.R. § 404.1520c(c)(1). Further, the more consistent the medical opinion is with the evidence from other medical sources and nonmedical sources, the more persuasive the medical opinion will be. 20 C.F.R. § 404.1520c(c)(2). Beyond

supportability and consistency, an ALJ may also consider the relationship the medical source maintains with the claimant, including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and whether the medical source examined the claimant, in addition to other factors. 20 C.F.R. § 404.1520c(c)(3)(i)–(v), (c)(5).

Here, the ALJ explained that Dr. Sharma was Plaintiff's primary care provider, who completed a mental medical source statement dated January 25, 2021, in which she listed Plaintiff's diagnoses (Tr. 25, 1510). The ALJ recognized that Dr. Sharma in that evaluation also rated Plaintiff's moderate to extreme limitations in many mental work functions (Tr. 25, 1512). Ultimately, however, the ALJ concluded that Dr. Sharma's opinion was inconsistent with other evidence in the record (Tr. 25). In support, the ALJ noted that mental status examination findings showed that Plaintiff was alert, oriented, and in no acute distress with normal mood and affect (Tr. 25, 499–500, 555, 560, 625, 1240, 1244, 1247, 1251, 1257, 1472, 1506, 1530). The ALJ also observed that Plaintiff had adequate attention, focus, and grossly intact memory during the mental consultative evaluation (Tr. 25–26, 1419–20, 1423). The ALJ noted that at the evaluation, Plaintiff had no significant impairment in reasoning or cognitive organization skills (Tr. 26, 1420). Therefore, the ALJ sufficiently articulated why Dr. Sharma's medical opinion was found inconsistent with other record evidence and not entirely persuasive.

Lastly, Plaintiff in his Reply argues that "when evaluating a claimant's medical records, an ALJ must take into account the fundamental differences between the relaxed, controlled setting of a medical clinic and the more stressful environment of a workplace." *Simon v. Comm'r of Soc. Sec.*, 7 F.4th 1094, 1107 (11th Cir. 2021). This Court may summarily dispose of this argument as *Simon* is distinguishable from the case at bar for a few reasons. First, in *Simon*, the plaintiff filed his application for disability benefits in March 2015, before the new regulations for evaluating opinion evidence were promulgated. *See* 20 C.F.R. § 404.1520c(a); *Yanes v. Comm'r of Soc. Sec.*, No. 20-14233, 2021 WL 2982084, at *5 n.9 (11th Cir. July 15, 2021). The court in *Simon* examined the plaintiff's claim under a different standard than this Court is tasked with because Plaintiff here applied for disability benefits after the new standard took effect, as evaluated above. Thus, the *Simon* court's analysis was derived from a standard inapplicable to Plaintiff before this Court. Second, the context in which the 11th Circuit highlighted this distinction between the relaxed, controlled setting of a medical clinic and the more stressful environment of a workplace, particularly focused on plaintiffs suffering from affective or personality disorder or highly disruptive mood disorder. *Simon*, 7 F.4th at 1107 (citing *Morales v. Apfel*, 225 F.3d 310, 319 (3d Cir. 2000) ("For a person . . . who suffers from an affective or personality disorder marked by anxiety, the work environment is completely different from home or a mental health clinic.")). Because such diagnosis is not present here, this Court declines to apply the distinction articulated in *Simon* raised in Plaintiff's Reply. Accordingly, substantial

evidence supports the ALJ's findings with respect to Dr. Sharma's medical opinions about Plaintiff.

### IV.

Accordingly, after consideration, it is hereby

ORDERED:

1. The decision of the Commissioner is affirmed.

2. The Clerk is directed to enter final judgment in favor of the Commissioner and close the case.

DONE AND ORDERED in Tampa, Florida, on this 4th day of March, 2024.

ANTHONY E. PORCELLI
United States Magistrate Judge

cc: Counsel of Record